UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD PIONTEK,

        Petitioner,         Case Number 08-15074
                                        Honorable David M. Lawson

v.

CARMEN PALMER,

        Respondent.
_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Ronald Piontek, presently confined at the Michigan Reformatory in Ionia, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions of four counts of first-degree criminal sexual conduct, Mich. Comp. Laws 750.520b, and one count of second-degree criminal sexual conduct. Mich. Comp. Laws 750.520c. A Wayne County, Michigan circuit court jury found the petitioner guilty of those crimes, and the trial judge sentenced him to concurrent prison terms, the longest of which was 20 to 40 years. The petitioner raises three claims: (1) the petitioner's right to a fair trial and confrontation were violated when he was denied access to the complainant's school and psychological counseling records; (2) the petitioner's right to present a defense was violated when the trial court refused to grant an adjournment after a police officer ignored defense counsel's subpoena to appear at trial; and (3) the petitioner was denied the effective assistance of counsel at trial. The Court finds that none of those claims have merit. Therefore, the Court will deny the petition.

I.

The charges against the petitioner arose from an allegation by his niece, AH, that he had sexually assaulted her for a period of several years. AH testified at trial that she was fourteen years

old. One day in 1999, when she was nine years old, her cousin Denise took off AH's clothes and touched her in her private area. AH testified that she did not tell anyone what had happened until a few months later when she told her uncle, the petitioner. AH testified that she had a very close relationship with the petitioner. AH and her brother would sleep at the petitioner's house about every other month.

The next time AH visited the petitioner's house, the petitioner took her into a basement bathroom, undressed her, touched her vagina with his tongue, and put his finger inside. That happened several more times on subsequent visits to his house. On another occasion, AH testified that the petitioner tried to put his penis in her rectum, but he stopped when she started to cry. The petitioner also had AH rub his penis with her hand. When these events occurred, the petitioner would tell AH not to tell anyone or her aunt would divorce him and it would be her fault. The incidents started in 1999 and continued until about Christmas of 2004. One year during that period, she lived at the petitioner's house with her mother and brother while her parents were undergoing a divorce. She testified that no incidents occurred while she lived in the petitioner's house, but they picked up again once her family moved out. Despite the incidents, AH liked to go over to the petitioner's house because he would always take her and her brother to a toy store and buy them toys.

AH testified that when she was eleven years old, her younger brother brought up the incident with her cousin Denise in front of their mother. At first, AH denied the incident because she did not want Denise to get in trouble. At some point she relented and told her mother what had happened. She was taken to a police station where she told an officer about the incident, but she did not tell him about any incidents involving the petitioner. A couple of days later, in August of 2002, she was interviewed again by a forensic interviewer, Daphne Bradfield. She told Bradfield about the

-2-

incident with Denise in detail. Bradfield asked AH whether anyone else had molested her, and AH testified that she told Bradfield that no one else had, even though the petitioner had been assaulting her at the time. AH acknowledged that she lied to Bradfield. AH explained when she revealed the incident with Denise, her family stopped talking with that side of the family. She explained that she did not reveal the incidents with the petitioner to Bradfield because she did not want to also lose her relationship with the petitioner and her aunt.

AH testified that when she turned thirteen years old she started cutting herself. She explained that she cut herself to turn emotional pain into physical pain, which would then go away when the cuts healed. Her mother took action after AH left a note admitting to cutting herself. Eventually, her mother discovered several of AH's journals. In one of the journals, AH wrote that the petitioner had hurt her. AH's school counselor had also discovered that she was cutting herself. AH testified that the counselor told AH that if she did not tell her mother about it, then the counselor would.

AH testified that when her mother confronted her with the entry about the petitioner hurting her, AH told her about the incidents in the petitioner's basement. She testified that she loved the petitioner and when she told her mother about the incidents she was worried about what would happen to him. She was taken to a police station again where she told Officer David Holt about the incidents.

Melissa Hendricks, AH's mother, testified that she learned of the incident with Denise in 2002. Hendricks did not seek counseling for AH for that incident because AH did not appear traumatized. Hendricks discovered that AH was cutting herself during the summer of 2004. When she learned about the cutting, Hendricks searched AH's bedroom and found journals hidden in a dresser drawer. She contacted her ex-husband, Robert Hendricks, and he said he had also found a

journal written by AH. After reading the journals, Melissa confronted AH about the entry mentioning the petitioner. AH became hysterical, but eventually she told her about the incidents. Two days later, Melissa drove AH to the police station. AH was later interviewed by Officer Holt. Since the disclosure, AH has attended counseling, but Melissa was not aware of AH having received counseling prior to that.

Melissa testified that she did not take AH to counseling even after she learned of the cutting. Rather, she responded to the cutting by punishing AH. Melissa acknowledged that when she learned about the incident with Denise, she probably asked AH if anyone else had molested her, but she could not specifically remember. Melissa's close relationship with Denise's mother, her aunt, ended when she made the police report. AH never saw Denise after the report was made. Robert Hendricks's testimony largely corroborated Melissa's testimony regarding the discovery of the journals.

Heather Miller, one of the petitioner's co-workers, testified for the defense. She said that she had seen AH with the petitioner several times and never noticed any unusual behavior between them. Sandra Aedelzk testified that she had been friends with the petitioner and his wife for eight years. She also knew AH and her little brother, but she never noticed anything strange behavior between AH and the petitioner.

Christina Piontek, the petitioner's wife, also testified in his defense. She testified that she and the petitioner were very close with AH and her family, and they lived in their home during 2002 and 2003. AH loved spending time with the petitioner, and she spent about one night a month at their home. Christina testified that after her son was born, she often woke up in the night to feed him, but she never heard the petitioner go down into the basement.

Based on this evidence, the jury found the petitioner guilty on all counts and he was sentenced to prison.

The petitioner filed a direct appeal in the Michigan Court of Appeals that asserted the same claims presented in the present petition. The Court of Appeals affirmed in an unpublished opinion. *People v. Piontek*, No. 268048, 2007 WL 1227705 (Mich. Ct. App. Apr. 26, 2007). The Michigan Supreme Court denied the petitioner's application for leave to appeal. *People v. Piontek*, 480 Mich. 861, 737 N.W.2d 701 (2007).

The petition contains the following claims for relief:

I. The trial court violated the petitioner's rights to a fair trial, due process of law, to present a defense, and to confront his accuser by denying the petitioner's request to review and release school records and psychological records of the complainant where the complainant accused the defendant of assaulting her since the year 2000, but in 2002 told police, social workers, and others that the only person who sexually assaulted her was her cousin Denise.

II. The trial court violated the petitioner's right to present a defense and right to effectively confront his accuser by denying an adjournment when a properly defense-subpoenaed police officer chose not to show up for trial.

III. Petitioner's trial counsel denied him effective assistance of counsel when she failed to consult with forensic psychologists in a case involving a disputed allegation of sexual abuse made by a psychologically disturbed complainant, and such psychologists would have testified that her alleged process of recall and disclosure was inconsistent with what psychology knows.

Ptn. at 21, 29, 34. The respondent filed an answer in opposition to the petition.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See*

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, --- F.3d ---, ---, 2012 WL 833179, at *5 (6th Cir. Mar. 14, 2012). The court suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours,

-7-

its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Peak*, 2012 WL 833179, at *5; *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

The petitioner's first claim asserts that his rights to confrontation and a fair trial were violated by the trial court's ruling that he could not use the complainant's school and counseling records to impeach her credibility. The petitioner moved before trial to obtain child protective service records, psychological evaluation records, counseling records, and school records related to the complainant. He argues that after it was revealed that the complainant had been sexually assaulted by her cousin, she would have been asked by counselors whether anyone else had molested her. Because the petitioner was not investigated at that time, he believes that the complainant must have denied that anyone else had assaulted her.

The trial court initially agreed to review the child protective services (CPS) report *in camera* and it did not contain any exculpatory information, and if anything it went in "the other direction." Tr. Oct. 17, 2005 at 7-8. Nevertheless, the court stated it would conduct an *in camera* review of additional psychological or counseling records. At a later date, the court informed the parties that

-8-

no tapes existed for a forensic interview conducted with the complainant, but the court said it would obtain and review the interview notes and would obtain and review school counseling records. Trial commenced two weeks later without a record being made regarding the results of the *in camera* review.

At trial, the complainant, her mother, and her father denied that the complainant had received any counseling after the incident with her cousin came to light. The complainant admitted during her trial testimony that when she was interviewed by Ms. Bradfield as part of the earlier investigation of her cousin, she denied that anyone else had molested her, and she acknowledged that she lied to Bradfield.

The Michigan Court of Appeals rejected the petitioner's claim because the evidence that might have been found in counseling records would have been "cumulative." *Piontek*, 2007 WL 1227705, at *2. The court observed that "the complainant admitted during cross-examination that she told her counselor at the time in question that no one else had sexually assaulted her besides her cousin." *Ibid.* The court concluded that "Piontek has not only failed to show that the counseling records at issue contained exculpatory evidence, but he also failed to show outcome determinative error. Thus, he has not shown a due process violation." *Id.* at *3. The court also held that the petitioner abandoned his claim under the Confrontation Clause because no argument was developed in his appellate brief. *Ibid.*

The petitioner presses the same claim under both the Confrontation Clause and the Due Process Clause in this Court. However, the state court correctly applied established Supreme Court law in denying the claim.

The petitioner's Confrontation Clause theory was rejected by the Supreme Court in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). In that case, the defendant was accused of sexually

-9-

assaulting his thirteen-year-old daughter, and the trial court denied his motion to compel a state agency charged with investigating child abuse to turn over its records concerning his case. The plurality determined that "the right to confrontation is a trial right" and declined "to transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery." *Id*. at 52. The plurality stated that "[t]he ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses." *Id.* at 53 (footnote omitted). The trial court in this case permitted the defendant's attorney to cross-examine AH extensively, and counsel obtained admissions that supported the petitioner's version of the facts. No Confrontation Clause violation is shown by the state court record.

The *Ritchie* Court also addressed the due process argument and determined that "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. *Ritchie*, 480 U.S. at 59 (citing *United States v. Bagley*, 473 U.S. 667, 675 (1985); *United States v. Agurs*, 427 U.S. 97, 111 (1976)). The Court flatly stated that "[d]efense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." *Id.* at 59-60 (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).

In this case, the trial court appears to have reviewed *in camera* all the records requested by the petitioner. Established Supreme Court law required nothing more. The trial court found nothing exculpatory in the records, and the petitioner does not contend that other records revealed exculpatory information. Moreover, the complainant readily admitted at trial that she lied to the CPS examiner and told her that no one else had molested her. That admission is all the petitioner contends the records would have shown. The state courts' decision that no due process violation

-10-

occurred correctly applies Supreme Court precedent because the petitioner failed to show that any material exculpatory information was withheld from him.

B.

The petitioner's second claim is that his right to present a defense was impaired when the trial court refused to adjourn the trial after a police officer ignored a subpoena. The officer in question, Alan Brzys, conducted the investigation of the prior sexual assault committed by the complainant's cousin. The petitioner says that he wanted to question Brzys on whether the complainant told him that no one other than her cousin had molested her.

A trial court's denial of a continuance can rise to the level of a constitutional violation where there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar*, 376 U.S. at 589. To obtain habeas relief, it is not sufficient for the petitioner to show that the trial court arbitrarily denied the continuance request; he "must also show that the denial of a continuance actually prejudiced his . . . defense." *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense." *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003).

The state court of appeals denied the petitioner relief on this claim in part because it determined that the police officer's testimony would have been barred by Michigan Rule of Evidence 608(b). That rule, like its federal counterpart, prohibits extrinsic evidence of a prior act

that may be collateral. However, the complainant's denial that others had molested her was hardly collateral, since that statement would have excluded the petitioner as a possible assailant during the relevant time period. That evidence could have been received regardless of its impeaching effect on AH's credibility.

> However, the court of appeals also determined that
>
> the complainant admitted that, although she initially testified that Piontek had sexually assaulted her in 2002, she indicated to a forensic interviewer at that time that no one had sexually assaulted her besides her cousin. The complainant made this admission after having her recollection refreshed by the police report of the forensic interview. In light of this, any testimony from the police officer on this issue would have been merely cumulative. Thus, it is not reasonably probable that the absence of the officer in question at trial was sufficient to undermine confidence in the outcome.

*Piontek*, 2007 WL 1227705, at *3 (internal quotation marks and citations omitted).

That decision was not contrary to clearly established Supreme Court law, nor did it involve an unreasonable application of law or facts. The petitioner asserts that the missing testimony from the officer was important because "[t]he level of questioning that the Complainant was subject to, the degree of her denial, and the circumstances of the denial were necessary for the jury to realize the solemn nature of the statement [that no one else molested her]." Petitioner's Brief, at 33. That may be true, but the state courts' determination that additional testimony from the officer would not have enhanced the victim's own admission of falsehood cannot be found unreasonable.

It is troubling that a sworn peace officer ignored a valid subpoena; it appears that the officer chose instead to go hunting. The officer's testimony certainly would have been relevant and not collateral, and the trial's outcome hinged entirely on the credibility of the complainant. The evidence that the complainant had admitted that no one other than her cousin had molested her seriously undermined her contrary testimony at trial. The trial court's decision to hold Brzys

accountable for his recalcitrance at a later date was appropriate, but it provided no solace to the petitioner. The better practice would have been to continue the trial and retrieve the witness.

Nevertheless, this Court cannot find unreasonable the state court's determination that no prejudice befell the petitioner. The complainant admitted that when she was interviewed by Ms. Bradfield, she told her that her cousin was the only person who was molesting her. Defense counsel pressed that point on cross-examination. It is not clear that the complainant made the same statement to officer Brzys, although the record suggests that Brzys made no such notation in his police report. Officer Brzys could have testified about the circumstances of the interview, but this record does not support the argument that he would have furnished helpful testimony to the defense. Defense counsel conducted a full and unfettered cross-examination of the complainant, who admitted that she had lied to another investigator. The failure to grant the continuance did not foreclose that line of defense.

This Court must conclude, therefore, that the Michigan Court of Appeals's decision on this issue was not contrary to or an unreasonable application of Supreme Court precedent.

C.

The petitioner's third claim asserts that he was denied the effective assistance of counsel because his trial attorney did not consult with or call a psychiatric expert concerning the complainant. The state court of appeals thoroughly discussed that claim and found it to be without merit. That court began its discussion by observing that the testimony of a psychiatric consultant might not have been admissible under Michigan's expert witness rules. That conclusion likely is incorrect. *See People v. Beckley*, 434 Mich. 691, 710, 456 N.W.2d 391, 399 (1990) (holding that "aspects of 'child sexual abuse accommodation syndrome,' which specifically relate to the particular behaviors which become an issue in the case are admissible").

However, that court also held that "this failure [to call or consult a psychiatric consultant] was not outcome determinative in light of defense counsel's effective cross-examination of the complainant during which the complainant admitted inconsistencies in her recollection and disclosure of events regarding Piontek's abuse." *Piontek*, 2007 WL 1227705, at *6. That decision was not an unreasonable application of federal law.

The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'" *Premo v. Moore*, --- U.S. ---, ---, 131 S. Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Because of the high deference accorded state court determinations by AEDPA, establishing that counsel was ineffective and, therefore, the petitioner was denied his right to counsel under the Sixth Amendment is difficult. The Supreme Court explained recently:

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ---, ---, 130 S. Ct. 1473, 1485 (2010). . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ---, 129 S. Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

-14-

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Michigan Court of Appeals summarized the petitioner's argument as follows:

Piontek essentially claims that he was denied the effective assistance of counsel because of his trial counsel's failure to consult a psychiatric expert concerning problems with the complainant's disclosure and memory of the abuse. In support of this claim, Piontek cites [Dr.] Campbell's report, which analyzes the complainant's testimony in relation to other claims of childhood sexual abuse, a childhood sexual abuse accommodation syndrome (CSAAS) study,[46] an affidavit by appellate counsel (indicating his opinion that Piontek should have retained a psychiatric expert), and an article about a victim who admitted fabricating allegations of childhood sexual abuse.

---

[46]CSAAS is "a theoretical model that posits that sexually abused children frequently display secrecy, tentative disclosures, and retractions of abuse statements[.]"

*Piontek,* 2007 WL 1227705, at *5. The court reasoned that Dr. Campbell's evidence would not have been helpful to the petitioner's case because, "[i]n light of the complainant's testimony, Piontek's own CSAAS study undercuts the reliability of Campbell's findings because the complainant's testimony concerned the very issues that the CSAAS study asserts require additional study." *Id.* at *6. The court then questioned the admissibility of the proposed evidence — a finding that, as noted earlier, is dubious — and then held that deficient performance cannot be based on the failure to offer inadmissible evidence. That finding is difficult to sustain.

However, even assuming that trial counsel's performance was deficient, the petitioner must show prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a

-15-

fair trial." *Strickland*, 466 U.S. at 687. He must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The state court found that defense counsel's vigorous cross-examination vitiated any claim that the petitioner was denied a fair trial because of the want of expert psychological evidence. This Court finds that "fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786. Therefore, the state court's decision is not an unreasonable application of *Strickland*.

The state appellate court also found that state law would have prohibited an expert to testify whether the petitioner fit the profile of a sexual predator, and that counsel had no evidentiary basis to object to the admission of the complainant's journal entries. Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals reasonably determined that the proposed evidence was inadmissible under Michigan law, this Court defers to that determination in resolving the petitioner's ineffective assistance of counsel claim, where deficient performance was based on those evidentiary decisions. *See Brooks v. Anderson*, 292 F. App'x 431, 437-38 (6th Cir. 2008). The Michigan Court of Appeals's determination that the petitioner was not denied the effective assistance of trial counsel because of counsel's failure to hire an expert witness to testify to profiles and to object to admission of the journal entries was not contrary to, or an unreasonable application of, clearly established federal law, and thus did not warrant habeas relief.

III.

The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

                                                s/David M. Lawson  
                                                DAVID M. LAWSON  
                                                United States District Judge

Dated: March 20, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 20, 2012.

                                s/Deborah R. Tofil  
                                DEBORAH R. TOFIL